### James P. Farley *versus* Otis G. Randall *et al.*

After the several jail limits were extended to the boundaries of the counties in which the jails were respectively situated, in regard to debtors committed in execution for debts contracted after April 2, 1834, a debtor imprisoned on execution for a debt contracted before that day, gave bond conditioned that he would remain within the precincts of the prison. It was *held*, that such debtor, by going without the original jail limits, but not without the county, had committed a breach of the condition for which his surety was liable, although the limits were not set out in the bond, or the time when the debt was contracted noted on the execution, and although the jailer, upon being inquired of by the obligors when the bond was executed, had informed the debtor, that he might go anywhere within the county without breaking the condition of the bond.

DEBT upon a bond, against Randall, the principal, and E. K. Baxter, the surety. The bond was dated May 24, 1837, and was conditioned that Randall, the principal, should remain a true prisoner within the precincts of the prison within the county of Suffolk, from the date of the bond until he should be lawfully discharged.

At the trial it appeared, that Randall, previously to the date of the bond, had been committed to prison by virtue of an execution issued in favor of the plaintiff on a judgment recovered at the April term, 1837, of the Court of Common Pleas; that such judgment was founded upon a cause of action arising before April 2, 1834; that the bond in suit was given for the liberty of the prison limits; that immediately after the execution of the bond, and before he had been lawfully discharged, Randall left the prison, and went into State street in Boston; and that this was the breach of the bond complained of.

The defendant Baxter contended, that Randall was, in fact, within the limits of the prison, when he was in State street, such limits embracing the whole of the county of Suffolk, so far as respected debts accruing after April 2, 1834; that Randall having performed the condition of the bond in its terms, this action could not be maintained against Baxter as surety; and that if it had been the intention to restrain Randall to Ward No. 5, or any limits within the exterior limits of the county, it should have been so stated in the condition in the bond.

But the judge ruled, that as such prison limits were restricted by law to Ward No. 5, in respect to contracts entered into

before April 2, 1834, that ward must be deemed the prison limits, in the present case ; and, therefore, that the principal, by going into State street, which was without the limits of Ward No. 5, had committed a breach of the bond.

The defendant Baxter then proved by a witness, (all objection to the admissibility of the evidence being waived by the plaintiff,) that at the time when the bond was executed by the defendants, they inquired of Thomas Stevenson, the jailer, who took the bond, within what limits Randall must confine himself in order to avoid a breach of the condition ; that Stevenson told them, that he might go anywhere within the limits of the county ; and that Randall went immediately after the execution of the bond into State street.

But the judge ruled, that the facts so proved, constituted no defence to the action ; and a verdict was taken by consent for the amount of the plaintiff's claim, subject to be amended or set aside, as the Court might think proper.

*April 4th.*

*Ward*, for the defendants, to the point, that the condition was to be construed strictly in favor of the surety, and, therefore, that he was not liable as for a breach, if the principal remained within either of the jail limits, cited *Ludlow* v. *Simond*, 2 Caines's Cas. 1 ; *Arlington* v. *Merricke*, 2 Saund. 411 ; *Liverpool Water Works Co.* v. *Atkinson*, 6 East, 507 ; *St. Saviour's* v. *Bostock*, 5 Bos. & Pul. 175 ; *Stratton* v. *Rastall*, 2 T. R. 366 ; *Wright* v. *Russell*, 3 Wils 530 ; *Myers* v. *Edge*, 7 T. R. 254 ; *Wright* v. *Johnson*, 8 Wend. 512 ; *Rogers* v. *Warner*, 8 Johns. R. 119 ; *Walsh* v. *Bailie*, 10 Johns. R. 180 ; to the point, that as there was a latent ambiguity, the parol evidence was admissible to show, that it was the understanding of the parties, that Randall should have the liberty of the whole county, *Birch* v. *Depeyster*, 4 Campb. 385 ; *Jeffery* v. *Walton*, 1 Stark. R. 267 ; *Peisch* v. *Dickson*, 1 Mason, 11 ; *Choate* v. *Burnham*, 7 Pick. 274 ; *Rex* v. *Laindon*, 8 T. R. 380 ; *Foster* v. *Woods*, 16 Mass. R. 116 ; *Baker* v. *Paine*, 1 Ves. sen. 456 ; *Boston Hat Manufactory* v. *Messinger*, 2 Pick. 231 ; to the point, that if there was no ambiguity, or if the parol evidence was not admissible to explain it, the bond must be deemed to have been executed under a mistake of law or fact, and the defendants were, for this reason, entitled to relief, *Livingston* v. *Hastie*

2 Caines's R. 250 ; *Leland* v. *Stone*, 10 Mass. R. 459 , *Tower* v. *Durell*, 9 Mass. R. 332 ; *Shelburne* v. *Inchiquin*, 1 Bro. Ch. R. 350 ; *Henkle* v. *Royal Exchange Ass. Co.* 1 Ves. sen. 317 ; 3 Stark. on Evid. 1019 ; *Lansdown* v. *Lansdown, Mosely*, 364 ; *Pusey* v. *Desbouvrie*, 3 P. Wms. 315 ; and to the point, that Stevenson was the agent of the plaintiff in taking the bond and his acts and declarations were binding upon the plaintiff, and that the plaintiff, if injured thereby, has his remedy against the officer, for a neglect of his duty ; Revised Stat. *c*. 97, §§ 63, 65, 66.

*D. A. Simmons*, and *Gay*, for the plaintiff, to the point, that in construing this bond, no distinction was to be made between the principal and the surety, cited *Paine* v. *Ely*, 1 Chipman, 37 ; to the point, that the defendants were bound to know the extent of the jail limits ; they being established by statute, and that ignorance thereof would not exonerate them from their liability, 1 Story on Eq. § 111 ; to the point, that it was not in the power of the jailer officer to extend the limits, either by his acts or information, *Call* v. *Hagger*, 8 Mass. R. 423 ; *Clap* v. *Cofran*, 7 Mass. R. 98 ; *S. C.* 10 Mass. R. 373 ; and to the point, that the parol evidence was inadmissible, *Whitton* v. *Harding*, 15 Mass. R. 535.

*April 6th.*    WILDE, J. delivered the opinion of the Court. This is an action of debt, brought against the principal and surety, on a bond given for the liberty of the prison limits. It was proved, at the trial, that immediately after the execution of the bond, Randall the principal, who had been before committed to prison on an execution in favor of the plaintiff, left the prison, not having been lawfully discharged, and went into State street in Boston ; and the question is, whether this was a breach of the condition of the bond.

It was proved, that the cause of action, on which the plaintiff recovered judgment and execution against Randall, accrued before the 2d day of April, 1834 ; and by law the prison limits, as to all prisoners committed on executions where the causes of action accrued before that time, were confined to Ward No. 5 ; and as to prisoners committed on executions where the causes of action accrued after that time, the prison limits were extended to the whole county of Suffolk

It has been argued for the surety, that he is not to be held charged, unless there has been a breach of the condition, according to its literal and strict construction ; and this may be true, if such a construction is consistent with the object of the security, and the intention of the parties. But if this intention be manifest, the contract must be construed consistently with such intention ; and although a surety should not be bound beyond the scope of his engagement, yet a strained construction of his engagement is not to be adopted to discharge him from a liability which he has voluntarily assumed. In this, as in all other contracts, the intention of the parties is to govern ; and that intention is to be ascertained by the terms and the subject matter of the contract. The question then is, what is the true meaning of the condition, and to what extent did the surety undertake to be responsible for the compliance with the condition of the bond by the principal. And to this question there can be but one satisfactory answer. The condition is, that Randall should not go without the exterior limits of the prison, until he should be lawfully discharged. To what limits does the condition refer ? Clearly, we think, to the limits by which Randall was confined, and not to the limits established for other prisoners. That this is the true construction of the condition, we cannot entertain a doubt. It accords with its letter and spirit, with the manifest understanding of the defendants, when they entered into the obligation in dispute, and with the object and purpose for which it was given.

The intention of the principal was, to obligate himself to remain a true prisoner within the prison limits allowed to him by law, until he should be lawfully discharged ; and the surety undertook to be responsible to the plaintiff, if the principal should not so remain. His engagement was coextensive with that of the principal.

It has been argued, that the limits of the prison should have been set out in the condition, or that the plaintiff should have noted on the execution the time when the cause of action accrued. But we know of no law which requires either alternative. The bond and the condition are in the common form ; and the plaintiff was not bound to give notice of a fact which was well known to the execution debtor. And if the fact had

Farley<br>v.<br>Randall.

not been known to him, the plaintiff would have been under no obligation to give notice. It was the debtor's business to ascertain the prison limits, and so both of the defendants appear to have understood it; for they made the necessary inquiry of the jailer, and unfortunately he, by mistake, misinformed them, not knowing, undoubtedly, that the debt originated before the 2d of April, 1834.

The defendants' counsel contend, that as the breach of the bond was caused by this misinformation of the jailer, they are not by law responsible therefor. If the jailer had been the plaintiff's agent, this argument would have weight. But he was in no respect the plaintiff's agent; he was an officer of the law, and acted under its authority. The liberty and license allowed to the execution debtor on his giving bond, was allowed by law, and not by the plaintiff; and a license by law must be strictly pursued.

If the jailer was the agent of either party, he was the agent of the debtor. The bond was given on his application, and for his accommodation. The plaintiff therefore is not to be prejudiced by any mistake of the jailer, or any misapprehension of the principal obligor as to the extent of the prison limits. If he had informed the jailer when the debt to the plaintiff, for which execution issued, had originated, this mistake probably would not have occurred. If, therefore, there has been any negligence of either party, actual or constructive, it has been on the part of the debtor, and not on the part of the creditor.

The loss must fall on the surety, without any fault of his; but this too frequently happens where similar liabilities are assumed. A surety must be held to the performance of his engagement, however hard upon him it may be; for the law must not be strained to save a party from loss in a hard case.

*Judgment on the verdict.*